# 1

## CONSTRUCTIVE DENIAL OF COUNSEL DURING
## THE CRITICAL PRETRIAL PREPARATION PERIOD

In this case, a constructive denial of counsel occurred. This is true because, the record clearly demonstrates that at no time, whatsoever, during the critical pretrial preparation period did Petitioner Taylor's court-appointed counsel, Alfred P. Brandt, provide consultation or communicate with him. In fact, the existing record shows that the only time counsel appeared, after being appointed, **"out of five months, was the day before trial, to tell me we had trial the next day."** (See, ST, June 19, 2014, p. 10).

Petitioner Taylor's assertion of the "constructive denial of counsel during the critical pretrial preparation period", is not a is not a simple matter of developed personality difficulties between himself and his court-appointed counsel. Neither is this a scenario where trial counsel's strategy backfired which Petitioner Taylor now takes exception. Likewise, this is not the case where court-appointed counsel did not see things Mr. Taylor's way. Finally, this "constructive denial of counsel" claim is not predicated where counsel failed to visit Mr. Taylor in the county jail as many times as he would have liked to have seen him.

Instead, at issue is not Petitioner Taylor's relationship with his attorney as such, but court-appointed counsel's total absence during a critical period of the pretrial preparation stage where counsel failed to consult with his client prior to the start of trial. One thing for certain, such a meeting is vital if counsel is competently to develop a meaningful defense. For example, if counsel does not meet and consult with his client for more than five minutes the day

prior to the start of trial, the defendant is completely unable to confide truthfully in his attorney and counsel will not know, for example, which investigative leads to pursue, whether there are favorable witnesses for the defense, or what kind of alibi the defendant may have. Therefore, without pretrial consultation with Mr. Taylor, counsel Brandt, without question, did not fulfill his vested constitutional duty to investigate. It is axiomatic that, there is a fundamental duty incumbent on defense counsel to conduct pretrial investigations; it necessarily follows that defense counsel cannot discharge this duty if he fails to consult with his client.

    Here, the State of Michigan provided Mr. Taylor an attorney, in name only, who appeared only once the day before trial for four minutes to simply inform his client that **"trial would start the following day."** (See, enclosed ST, June 19, 2014, p. 10). But that person was not counsel, because there was never a single time when appointed defense counsel, Alfred P. Brandt, made himself available to consult with Mr. Taylor. (See, enclosed ST, June 19, 2014, p. 10), (see also, Affidavits of Johnny Taylor and Carolyn Taylor). Counsel means, inter alia, open and complete consultation with the client. Without consultation, Mr. Taylor, an indigent defendant, had no attorney during the five month critical pretrial preparation period. Having counsel present alongside the accused for only four minutes the day before trial begins is <u>not</u> enought to satisfy the Sixth Amendment constitutionally imposed duty to consult with the defendant during the critical pretrial proceedings where consultation, thorough-going investigation and preparations are vitally important.

    In this case, Mr. Taylor had an absolute right to engage in

2

attorney-client consultation with counsel, prior to the start of trial. But he was not allowed access to counsel, out of five months of the critical pretrial preparation period, but for only four minutes the day before trial was to commence to tell his client that **"trial was to start the following day."** This was the complete denial of counsel in which Petitioner Johnny Taylor was denied the presence of counsel at the critical pretrial preparation period. U.S. Const, Am VI.

Any doubt that this Honorable Court may have as to counsel's total absence during the five month critical pretrial preparation period of the prosecution should be dispelled by the fact that when presented with the opportunity to clear the record before the court, court-appointed attorney, Alfred P. Brandt, never disputed the substance of Mr. Taylor's assertion regarding counsel's total absence during the "critical pretrial preparation period." (See, enclosed ST, June 19, 2014, p. 10), see also, (Affidavits of Johnny Taylor and Carolyn Taylor).

It is said that the pretrial preparation period constitutes a critical period because it encompasses counsel's constitutionally imposed duty to investigate the case. It is also said that, the mere physical presence of an attorney does <u>not</u> fulfill the Sixth Amendment entitlement to the effective assistance of counsel, particularly when Petitioner Taylor could not consult with his court-appointed counsel or receive informed guidance from his attorney during the critical five month pretrial period of the prosecution proceedings.

Petitioner Taylor has demonstrated that his court-appointed

3

counsel, Alfred P. Brandt, was utterly absent during the five month pretrial preparation period prior to the start of trial. Indeed, for no more than four minutes over the entire five month pretrial period counsel appears the day before trial to tell his client that **"trial will start the following day."** What is more, the complete denial of counsel in which the accused is denied the presence of counsel at a critical stage, mandates the presumption of prejudice.

Accordingly, in this case, it is undisputed that there was no consultation between Petitioner Johnny Taylor and his court-appointed attorney, Alfred P. Brandt, but for one four minute meeting the day before trial, to inform Petitioner Taylor that "trial was the next day." As shown here, it is well settled that a complete absence of counsel at a critical pretrial preparation period is a per se Sixth Amendment violation warranting automatic reversal of a conviction and sentence, or both, as applicable.

Here, the Michigan Court of Appeals' decision, on this issue, resulted in an "unreasonable application of clearly established Federal law because, the Michigan Court of Appeals identified the correct governing legal principle from this Court's decisions but unreasonably applied that principle to the facts of Petitioner Taylor's case. For the foregoing reasons, habeas relief should be issued here.

## PERJURY-FALSE TESTIMONY KNOWN
## TO BE SO BY THE PROSECUTOR

In this case, arresting Officer Galbreath initially that "he took the jacket during booking of Mr. Taylor. Next, he testifies that he took the jacket from Mr. Taylor, after the K-9 bit him on the arm resulting in puncture wounds from the K-9.

This testimony is problematic, if not, prejurious because the jacket in question had absolutely no holes, bite marks, blood etc., and the prosecutor knew it to be so.

For one thing, the jacket which Officer Galbreath testified about was in the same mint condition it was in when the officer claimed to have taken it from Mr. Taylor. (Tr. 148).

At trial, Counsel questioned the officer as follows:

Q. Do you know where the K-9... grabbed my client."

A. In the house or with him?

Q. On him?

A. No,...

Q. Exhibit that you have in front of you, does it have any any bite marks on it?

A. None that were clearly puncture holes or anything of that nature, No."

(Tr. p. 152).

The prosecutor then allowed Officer Galbreath to continue to give the false impression of facts with the court and jury, when he continued to lie saying:

Q. You don't know where that (jacket) came from other than

it was in the house somewhere?

     A.    No. if was given -- it was taken off of him by Officer Postma, I believe at the hospital. Based on the lable.

     Q.    No bite marks ...?

     A.    Not that I can see. No -- no puncher holes in it. (Tr. pp. 152-153).

Let's see. Which one was it, Officer Galbreath "took the jacket during booking" or was it "taken by Officer Postma at the hospital, or wasit "taken from somewhere in the house and someone gave it to him other than Officer Postma." One thing for certain, this was false and misleading testimony that the prosecutor knew but failed to correct the false immpression of facts left with the court and jury. It mattered not whether defense counsel knew of the perjured testimony and failed to impeach with it. The prosecutor has an independent constitutional duty to correct the perjury whenever it appears.

Officer Postma never testified that he took the jacket from Mr. Taylor and was never asked by anyone what clothing Mr. Taylor was wearing. On the other hand, Officer Galbreath's testimony never explained how he obtained the coat from Mr. Taylor. (Tr. p. 117). A lie is a lie, no matter what the subject, and because the perjury related to the credibility of the two police officers, reversal is mandatory. Habeas relief should issue here.

2

2

EXHIBIT 1

State of Michigan

In the Court of Appeals

| | |
|---|---|
| **People of the State of Michigan,**<br>Plaintiff-Appellee,<br><br>vs<br><br>**Johnny Taylor,**<br>Defendant-Appellant. | Court of Appeals No. 322629<br><br>Jackson County Circuit Court<br>13-3884 FC<br><br>Judge: Thomas D. Wilson |
| Attorney for Plaintiff: | Attorney for Defendant-Appellant:<br>Laurel Kelly Young P-40671<br>PO Box 8797<br>Grand Rapids, MI 49518<br>(616) 901-0243 |

## AFFIDAVIT OF JOHNNY TAYLOR

I, Johnny Taylor, being first duly sworn, deposes and says:

1. I am an adult of sound mind and body and am otherwise competent to testify to the allegations averred herein.

2. I make this Affidavit based upon personal knowledge to which I could testify if called upon to do so.

3. I was convicted of Armed Robbery (MCL 750.529) after a jury trial on May 14, 2014 and was sentenced to 20 to 50 years in prison on June 19, 2014.

4. Trial counsel failed to meet with me to prepare for trial until the day before trial.

5. On the day before trial our meeting lasted 10 minutes.

6. Prior to trial I wrote to trial counsel on many occasions and requested that he investigate the following:

    a. I told trial counsel that I was asleep on the couch with Ms. Banks at 308 Williams St. on the night of December 25-26, 2013, when Ms. Banks 17 year old son, Marquis Dayton Banks, banged on the door around 2 a.m. and she let him in because he said he had lost his key.

    b. I told trial counsel that when the police arrived a few minutes after Ms. Banks let her son in, that because I was on parole and out past curfew, that I ran to the back bedroom.

    c. Ms. Banks son would have had an opportunity to hide the money and gun in his mother's bedroom when she let him in before the police arrived and before I entered the bedroom. *[handwritten: correct]*

7. I wrote to trial counsel and advised him that I had the following witnesses that I wanted to testify in my defense.

    a. The cousin of Ms. Banks' who would have testified that I have known Ms. Banks since 1994 and that we have had relations since then. His testimony would have undermined her claim that we weren't really acquainted and that I had showed up at her door at 2 o'clock in the morning of December 26, 2014. (Tr, Preliminary Examination, 1/8/14, p 22)

    b. My brother who would have testified that he dropped me off at 1308 Williams St. because of my bad leg around 11:30 p.m. to 12:00 a.m.

    c. My brother who would have testified that I have been knowing Ms. Banks since 1994 and that I introduced him to Ms. Banks not him introducing me to Ms. Banks as she claimed. This would have undermined Ms. Banks claim that we weren't acquainted.

d. An internet expert to locate and offer into evidence photos of Ms Banks' son brandishing guns in photographs on Facebook. This would have undermined Ms. Banks claim that her son doesn't own, handle or have guns in her home as well as shown that one of her sons could be posing with the very gun used in the robbery.

e. I wanted Ms Banks' son, Marquis Banks, interviewed about his online Facebook photos depicting him brandishing guns.

f. I wanted Ms. Banks son interviewed as to where he was coming from December 26, 2013 at 2 a.m. when his mother let him in.

g. I wanted the medical doctor interviewed who treated me due to the gunshot wounds to my femoral artery, stomach, the bullet still remaining in my leg, the doctor who diagnosed the blood clot in my leg in November of 2013, my restless leg syndrome and the fact that I walk with a cane and could not have traveled 10 blocks, a mile or more through the snow from the Admiral Gas Station or 250 W. Prospect to 1308 Williams Street within 5-7 minutes as Officer Galbreath testified to at trial (TT, May, 2014, p 105) as well as Ms. Banks testified at preliminary examination that I allegedly was there 5 minutes before the police arrived. (PT, Page 26)

h. My medical files proving all injuries.

i. My cousin who would have testified that, along with Heather Banks cousin, John White, and my brother, Robert L. Taylor, Jr. that Ms. Banks appeared at my sister's BBQ Fourth of July weekend, asking me to come to to her house where we all danced at BBQ and played cards into the night.

8. Trial counsel did not even submit a witness list or investigate any of my witnesses.

9. I told trial counsel that I wanted to review the video recordings of the robbery that the prosecutor said he would get to my attorney in open court. Trial counsel told me, the day before trial at our only meeting after we initially, met, that there *was no video* of the robbery. At trial the next day the prosecutor introduced video recordings of the robbery from four different angles. At that time I asked trial counsel to adjourn trial so that I could review the video recordings of the robbery before the jury saw them. He did not adjourn nor did trial counsel object to the prosecutor only showing two of the camera angles, in fact he agreed to the prosecutor only showing two of the four camera angles knowing I had no seen any camera angles (TT, P 134) Telling me, "You can't see the robber's face" which had no connection to my conviction or how the prosecutor prosecuted my case upon me allegedly being the one wearing the coat in the robbery video not as to seeing the robber's face according to the prosecutor's opening statement ((TT p 56-57) As well as closing argument (TT, p 163-165) I told trial counsel I needed to view the robbery video to see if the robber had any distinctive marks, scars, or tattoos to prove it was not me in the video.

10. Trial counsel ignored my many written requests that I wrote to him and letters sent through a client of his that was in the cell with me when he went to court asking him to send me the discovery and to bring the robbery video of the robbery prior to trial and to review any photographs, but not limited to:

   a. The shoes and shoe prints in the snow,

   b. My arm that had been chewed up by the police dog,

   c. The coat that I was allegedly wearing when the dog bit me,

d. The two dollar bill that was allegedly in the Admiral Station cash drawer and log book it was recorded in as being in the drawer.

11. I told trial counsel to have the coat tested for DNA to show I could not have had the coat on in the robbery video, nor could I have been wearing the coat when the dog bit me because my blood would have been in the coat had I had the coat on when the dog bit me.

12. I told trial counsel to have the gun finger printed to show that my prints were not on the gun and that Ms. Banks son, Marquis Banks, could have been, proving I didn't handle the gun but her son did.

13. Trial counsel failed to question Ms. Banks as to whether or not it was actually her own son who knocked on the door that night of December 26, 2013 at 2:00 a.m. because he claimed he lost his key so his mother had to let him in.

14. Trial counsel failed to make an opening statement because he had no witnesses to call to testify or any evidence to support my defense because trial counsel failed to investigate anyone I asked him to or interview any of my witnesses.

FURTHER AFFIANT SAITH NOT.

Dated: 3-18-15

Johnny Taylor

The foregoing instrument was acknowledged before me this 18 day of March, 2015, by Johnny Taylor, who is personally known to me and who did take an oath.

Subscribed and sworn to before me this 18 day of March, 2015.

Notary Public

Notary Public, Saginaw, Co.
My commission expires 10/13/2018

EXHIBIT #9

State of Michigan

In the Court of Appeals

| **People of the State of Michigan,** <br> Plaintiff-Appellee, <br><br> vs <br><br> **Johnny Taylor,** <br> Defendant-Appellant. | Court of Appeals No. 322629 <br><br> Jackson County Circuit Court <br> 13-3884 FC <br><br> Judge: Thomas D. Wilson |
|---|---|
| Attorney for Plaintiff: | Attorney for Defendant-Appellant: <br> Laurel Kelly Young P-40671 <br> PO Box 8797 <br> Grand Rapids, MI 49518 <br> (616) 901-0243 |

### AFFIDAVIT OF CAROLYN TAYLOR

I, Carolyn Taylor, being first duly sworn, deposes and says:

1. I am an adult of sound mind and body and am otherwise competent to testify to the allegations averred herein.

2. I make this Affidavit based upon personal knowledge to which I could testify if called upon to do so.

3. I am the mother of Johnny Taylor and on several occasions Johnny wrote to me complaining that his attorney, Alfred Brandt, had not been visited by him, brought the video of the robbery of sent his discovery while in the county jail.

4. Johnny sent me a letter that he wanted me to take to the Jackson County Courthouse to get his discovery by way of Freedom Of Information Act.

EXHIBIT #9 cont,

5. Johnny called me May 13, 2013 on his attorney Alfred Brandt's phone to ask me to bring him clothes for trial because he had trial the next day.

6. Johnny wrote me several letters asking me to call his attorney to ask his attorney to bring the video of the robbery and his discovery.

FURTHER AFFIANT SAITH NOT.

Dated: 3/18/15

Carolyn Taylor

The foregoing instrument was acknowledged before me this 18th day of March, 2015, by Carolyn Taylor, who is personally known to me and who did take an oath.

Subscribed and sworn to before me this 18th day of March, 2015

Linda Samon
Notary Public

Notary Public, _____, _____
My commission expires

LINDA SAMON
NOTARY PUBLIC, Jackson County, MI
My Commission Expires April 23, 2018