UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHNNY TAYLOR,

                   Petitioner,                  Case No. 1:17-cv-855

v.                                      Honorable Robert J. Jonker

S.L. BURT,

                   Respondent.

_____/

## **REPORT AND RECOMMENDATION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Johnny Taylor is incarcerated with the Michigan Department of Corrections at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan.  Following a one-day jury trial in the Jackson County Circuit Court, Petitioner was convicted of armed robbery, in violation of Mich. Comp. Laws § 750.529.  On June 19, 2014, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 20 to 50 years[1].

       On September 22, 2017, Petitioner filed his habeas corpus petition raising the following grounds for relief:

    I.      Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitution where trial counsel failed to investigate, failed to call supporting witnesses, failed to test the coat introduced into evidence for DNA, and failed to cross-examine the prosecution's primary witness.

    II.     Petitioner was denied the effective assistance of appellate counsel on direct appeal where counsel failed to timely file Petitioner's motion to remand

---

[1] Petitioner's armed robbery sentence is being served consecutively to sentences imposed for other offenses for which he was on parole at the time he committed the armed robbery.  *See* Michigan Department of Corrections Offender Tracking Information System, https://mdocweb.state.mi.us/otis/otis2profile.aspx?mdocNumber=195621 (visited Dec. 21, 2020.)

pursuant to People v. Ginther, 390 Mich. 436 (1973), precluding appellate court review and depriving him of the necessary record support for his asserted claim of trial counsel's ineffective assistance.

(Pet'r's Br., ECF No. 1-1, PageID.30.)    The Court concluded that Petitioner had arguably exhausted his ineffective assistance of trial counsel claims in the state appellate courts; however, he had not exhausted his ineffective assistance of appellate counsel claims.  Because Petitioner had filed his petition so late in the period of limitation, the Court invited him to seek a stay pending exhaustion or to amend his petition to raise only his exhausted claims.  Petitioner opted to file a motion to stay.

Petitioner filed a copy of the motion for relief from judgment that he intended to file in the trial court along with his motion to stay.  The limited ineffective assistance of appellate counsel claim from his petition had expanded into eleven purported instances of professionally unreasonable conduct.  (Pet'r's Draft Mot. for Relief from J., ECF No. 10-1, PageID.292-293.) The Court granted the stay, dismissing the unexhausted claims, directing Petitioner to file his motion for relief from judgment within 30 days, and directing Petitioner to return to this Court and file a motion to amend his petition to include any newly exhausted claims within 30 days after the Michigan Supreme Court issued its final decision relating to Petitioner's motion.  (Order to Stay, ECF No. 13.)

Petitioner filed his motion for relief from judgment in the trial court—indeed, he filed it before the Court entered the motion to stay.  By order entered February 20, 2018, the trial court denied Petitioner's motion because, under Mich. Ct. R. 6.508(D)(3), Petitioner had not shown cause for his failure to raise the issues on appeal or prejudice.  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals and, when that was denied by order entered October 17, 2018, (Mich. Ct. App. Order, ECF No. 30-6, PageID.906), in the Michigan Supreme

Court.  The Michigan Supreme Court denied leave by order entered July 29, 2019.  (Mich. Order, ECF No. 30-8, PageID.1104.)

Respondent claims that Petitioner failed to promptly return to this Court with a motion to amend his petition and, therefore, Petitioner's claims should be dismissed as untimely. (Resp. Mot. to Dismiss, ECF No. 29.)  Respondent argues:

> This Court gave Taylor 30 days after the Michigan Supreme Court issued its order to file the present amended petition.  He instead took 79 days and does not explain the delay.

(Answer, ECF No. 29, PageID.481.)  Respondent mischaracterizes the Court's order.  The Court allowed Petitioner 30 days after the Michigan Supreme Court decided his claims to file a motion to amend his petition, not the petition itself.  (Order, ECF No. 13, PageID.355.)  Petitioner timely filed his motion to amend, along with a proposed petition and brief and an unnecessary motion for extension of time to file those materials.  (ECF Nos. 14-18.)  The Court granted Petitioner leave to amend his petition, but directed Petitioner to file his amended petition on the Court's approved form within 28 days.  (Order, ECF No. 19.)  Petitioner signed his amended petition on October 7, 2019—the 27th day—and sent it in an envelope postmarked October 8, 2019.  The Court determined that Petitioner had complied with the Court's direction and directed Respondent to answer the petition.  Therefore, Respondent's motion to dismiss the amended petition as untimely will be denied.

The amended petition raises five grounds for relief, as follows:

I.    Petitioner was constructively denied counsel at the critical pretrial stage of the proceeding when counsel failed to consult with Petitioner prior to the start of trial.

II.   Appellate counsel rendered deficient performance which prejudiced Petitioner when trial counsel failed to move for DNA testing of the green jacket in violation of the Sixth Amendment.

III.    Appellate and defense counsel ineffectiveness for failing to impeach the arresting officer, Galbreath, as to whether he actually removed the green jacket of Petitioner in police custody.

IV.    Appellate counsel was ineffective for not raising on direct appeal the prosecutor's knowing use of false evidence to obtain a tainted conviction and failed to correct the false impression of facts left with the court and jury.

V.    Appellate counsel failed to raise trial counsel's failure to subpoena Mr. Taylor's medical records and call medical personnel to establish Petitioner's total disability to not being able to run or physically run from the scene of the robbery as alleged by the prosecutor.

(Pet., ECF No. 20, PageID.422-428.)  Respondent has filed an answer to the petition (ECF No. 29) stating that the grounds should be denied because they lack merit or are procedurally defaulted. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

<u>**Discussion**</u>

**I.    Factual allegations**

The Michigan Court of Appeals described the evidence admitted at trial as follows:

At trial, evidence showed that in the early morning hours of December 26, 2013, an Admiral Gas Station in Jackson, Michigan was robbed.  During the robbery, the gas station attendant was struck in the head multiple times and forced at gunpoint to give the robber the money in the cash register.  The robber then absconded with the money from the register, including a marked $2 bill.  At trial, the clerk could not identify defendant as the robber because defendant was bundled up in a green coat that concealed his face.  Likewise, there was video footage of the robbery, some of which was played for the jury, but the perpetrator's face is not visible in the footage.

Police responding to the robbery were able to follow tracks from the gas station to the home of Heather Banks, a woman with whom defendant was acquainted.  Even though it was after 2:00 am and her five small children were sleeping in the home, Banks testified that she let defendant into her home to make a telephone call. Further, she testified that when police arrived, she told defendant that police were looking for him, at which time defendant ran into Banks's bedroom and hid.  Banks gave police permission to enter the home.  However, when ordered to exit the bedroom by police, defendant refused, prompting police to deploy a police dog to find defendant in the closet of Bank's bedroom.  The dog latched on to defendant's

4

arm; but, because defendant was wearing several layers of clothing, the dog did not puncture defendant's skin.  In particular, defendant was wearing a green jacket like the jacket worn by the gas station robber.

After the dog apprehended defendant, defendant was taken to the hospital to make sure he was uninjured.  On the way to the hospital, defendant waived his *Miranda* rights and, in response to police questioning, defendant stated that "the gun is not in the house."  Additionally, when police searched the bedroom where defendant had been hiding, in the box spring of Banks's bed, near a pair of reading glasses on the floor that did not belong to Banks or her family members, police found a BB gun that looked like a handgun as well as the money from the robbery, including the tracer $2 bill.  At the hospital, defendant told police that he needed his reading glasses to read some documents.

(Mich. Ct. App. Op., ECF No. 30-5, PageID.770-771) (footnote omitted).

Petitioner's counsel worked to poke holes in the prosecutor's case.  He noted the gun found was not fingerprinted, even though the robber on the video did not wear gloves.  (Trial Tr., ECF No. 30-3, PageID.734-738.)  He noted that there was no effort to match the footprints that the police followed to Petitioner's shoes.  (*Id*.)  He noted that there were no puncture marks in the green coat even though the police claim Petitioner was wearing it when he was grabbed by the police dog.  (*Id*.)  The jury deliberated for about half an hour before finding Petitioner guilty of armed robbery.

On appeal, in the brief he filed with the assistance of counsel, Petitioner raised the ineffective assistance of trial counsel issue that he raises in his amended petition as issue I.  In a *pro per* supplemental brief, Petitioner raised an additional ineffective assistance of trial counsel claim based on counsel's failure to subject the prosecution's case to a meaningful adversarial testing.  Petitioner's argument paralleled the argument raised in the main brief; but he added a claim that counsel's failures were so significant that, under *United States v. Cronic*, 466 U.S. 648 (1984), Petitioner should not be required to show prejudice.

The court of appeals rejected Petitioner's challenges and affirmed the trial court in an unpublished opinion issued November 17, 2015.  (Mich. Ct. App. Op., ECF No. 30-5,

PageID.770-777.)  Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  Petitioner raised the first issue from his court of appeals brief and then a new issue claiming that appellate counsel rendered ineffective assistance because she failed to file a timely motion to remand to permit Petitioner to develop the factual foundation for his claims of ineffective assistance of trial counsel.  By order entered June 28, 2016, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 30-7, PageID.1012.)

One year and 84 days later, Petitioner filed his initial petition in this Court.  The Court stayed the petition to permit Petitioner to exhaust additional claims in the state court. Petitioner's efforts to exhaust the additional claims in the state court are chronicled above.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

6

consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ineffective assistance of trial counsel (habeas ground I)

Petitioner repeats the ineffective assistance of trial counsel claim that his appellate counsel raised on direct appeal.  That claim was far-reaching:  trial counsel failed to investigate or prepare for trial, failed to call supporting witnesses, and failed to cross-examine the primary witness.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.  In resolving Petitioner's ineffective assistance of counsel claims, the Michigan Court of Appeals expressly applied the *Strickland* standard.  (Mich. Ct. App. Op., ECF No. 30-5, PageID.771.)

Petitioner argues that his ineffective assistance claims are properly measured against the standard of *United States v. Cronic*, 466 U.S. 648 (1984), not *Strickland*. Under *Cronic*, the denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. The court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003). Petitioner contends counsel was "totally absent" because he ""entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, at 695-96 (2002).

Petitioner's attempt to expand the specific discrete failings of counsel into a complete failure to oppose the prosecution's case is unavailing. As the Supreme Court explained in *Bell*, the difference between counsel's failures when properly measured by *Strickland* and counsel's failures when properly measured by *Cronic* are "not of degree, but of kind." *Bell*, 535 U.S. at 697 (footnote omitted). "[T]he attorney's failure must be complete." *Id*. The "failures" of counsel alleged by Petitioner, however, are "of the same ilk as other specific attorney errors [the Supreme Court has] held subject to *Strickland's* performance and prejudice components." *Id*. at 697-98.

It is simply not possible to review the transcript of the trial and conclude that Petitioner suffered a complete denial of counsel. It is for that reason that the Michigan Court of Appeals declined to apply the *Cronic* standard but instead applied *Strickland*:

> [D]efendant's reliance on *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984) and related cases is misplaced. Defendant's case does not fit within the narrow category of cases in which prejudice is presumed as described in

> *Cronic*, 466 US 648.  That is, contrary to defendant's argument on appeal, the record evinces that defense counsel investigated the case and subjected the prosecution's case to meaningful adversarial testing.  Defendant's claims to the contrary, as detailed below, are premised on counsel's purported failures at specific points in the proceedings, and such claims are properly analyzed under *Strickland*, not *Cronic*.

(Mich. Ct. App. Op., ECF No. 30-5, PageID.775.)  The state appellate court's application of

*Strickland* to resolve Petitioner's ineffective assistance of counsel claims is entirely consistent with

the clearly established federal law of *Bell v. Cone.*

When a federal court reviews a state court's application of *Strickland* under

§ 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at

105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S.

12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122

(2011).  In those circumstances, the question before the habeas court is "whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v.

Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently

again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and

AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner's appellate complaints regarding trial counsel's failure were far-reaching

and the court of appeals' application of the *Strickland* standard was detailed and thorough.  The

appellate court's analysis defies effective summary.  At the risk of being long-winded, the analysis

is set forth in its entirety below:

> [D]efendant first argues that trial counsel was ineffective for failing to investigate and for failing to prepare for trial.  Specifically, defendant asserts that counsel did not meet with defendant an adequate number of times.  According to defendant, counsel also failed to investigate the possibility that Banks's 17-year-old son was the gas station robber.  Defendant claims that, before trial, he told his trial counsel that he was asleep on Banks's couch when Banks's son returned to the house at around 2 a.m.  He now asserts that counsel should have investigated potential testimony from Banks's son regarding his activities that night, the presence of guns

in the home, and whether he had entered the room where the items from the robbery were found.  Defendant also claims that counsel failed to procure evidence (or at least failed to share that evidence with defendant), including photographs of footprints in the snow, the video footage of the robbery showing all the camera angles, photographs of defendant's arm after he was bitten by the dog, photographs of the green coat worn by defendant, and photographs of the $2 bill found in Banks's home.

As noted, defendant failed to move the trial court for a new trial or for an evidentiary hearing.  As a result, there is no record support for defendant's assertion that counsel failed to conduct an investigation, that counsel failed to meet with defendant a reasonable amount of times, that counsel failed to obtain evidence or to share it with defendant, or that Banks's son possessed guns, that he returned home late to the house, or that he had an opportunity to enter the room where police discovered evidence of the robbery.  Cf.  *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001).  To the contrary, by defendant's own admissions, counsel met with him before trial and defendant sent additional communications to his attorney via letter.  Our review of the record also shows that, as a general matter, defense counsel made a detailed demand for discovery, and that at trial counsel was prepared to cross-examine witnesses and to present closing arguments.[3]  While counsel may not have proceeded with the strategy now advanced by defendant on appeal, there is nothing in the record to support defendant's assertions that counsel's strategic decisions were made without adequate investigation or that they were unreasonable in light of counsel's pre-trial investigations.  See *Trakhtenberg*, 493 Mich at 52.

---

[3] For example, counsel argued during closing (1) that defendant could not be identified from the video of the robbery, (2) that the robber did not wear gloves and yet no fingerprint evidence had been introduced to tie defendant to the crime, (3) that police made no effort to match defendant's shoes to the footprints they followed to Banks's house, (4) that there were no telephone records to support Banks's testimony that defendant made calls while at her house, and (5) that the green coat supposedly worn by defendant did not have dog marks as one would expect given the manner of defendant's apprehension.  In these circumstances, counsel maintained that the prosecutor had shown nothing more than that defendant was in Banks's house and bitten by a dog.

Moreover, with respect to Banks's son in particular, the record evidence does not support the defense that defendant now claims his counsel should have investigated and presented at trial.  That is, contrary to defendant's assertions on appeal, Banks denied having a gun in the home and, when defense counsel asked Banks at trial whether any of her children had "been out and come back in that night," she indicated that they had all stayed in all night.  Police confirmed that Banks's children were in bed when they entered the home and that the children had to be removed to squad cars for their safety while police tried to rouse defendant from his hiding place in the closet.  In other words, on the record presented, defendant has not established the factual predicate of the defense he now claims counsel should have investigated and pursued.  See *Hoag*, 460 Mich at 6.  And,

11

consequently, defendant has not shown counsel performed below an accepted standard of reasonableness or that he was prejudiced by counsel's performance.

We note that defendant filed an untimely motion in this Court to remand for an evidentiary hearing and, in support of that motion, defendant attached his own affidavit, attesting to counsel's failure to provide him with various pieces of evidence and describing a conversation in which he told counsel his theories about Banks's son. However, defendant's request for a remand was denied and, because defendant's affidavit is not part of the lower court record, we need not consider it at this time. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001).

Moreover, even if we were to consider defendant's affidavit, he cannot establish his ineffective assistance claim based on his attestations in that document. First, although defendant indicates that he told counsel his suspicions regarding Banks's son, he has not made an offer of proof from his attorney, Banks, or Banks's son to establish what efforts, or lack thereof, were made by his attorney to investigate this lead. Cf. *Carbin*, 463 Mich at 601. Consequently, even considering defendant's affidavit, he has not established the factual predicate of his claim and he has not overcome the presumption that counsel provided effective assistance. Second, it is clear that defendant has failed to make a showing of prejudice. Defendant in fact makes no effort on appeal to explain how counsel's purported failures could be construed to have affected the outcome of the proceeding. And, in contrast to defendant's threadbare allegations against Banks's son, the evidence of defendant's guilt is overwhelming. Shortly after the robbery, police followed fresh footprints from the gas station to Banks's home where they found defendant hiding in a closet. The cash from the robbery was found in the room where defendant was hiding, defendant was bundled up in several layers of clothing, including a green jacket consistent with that worn by the gas station robber, and defendant obliquely admitted his knowledge of the gun used in the robbery when he told police that "the gun is not in the house." Given this considerable evidence of defendant's guilt, we cannot conclude that further investigation or additional pre-trial preparation by counsel in the manner proposed by defendant would have been reasonably likely to affect the outcome of the proceedings. Thus, defendant has not shown that he was denied the effective assistance of counsel.

In a related argument, defendant also argues on appeal that counsel was ineffective for failing to call any supporting witnesses at trial. Specifically, defendant claims counsel should have called (1) an "internet expert" to locate photographs on Facebook that depicted Banks's son holding guns, (2) a medical expert to testify that defendant could not have travelled the distance from the gas station to Banks's house due to defendant's previous gunshot wound and his restless leg syndrome, (3) Banks's son to question him about his activities the night of the robbery as well as, more generally, his possession of guns, (4) defendant's brother to testify that he dropped defendant at Banks's home at 11:30 p.m. that evening, and (5) Banks's cousin to undermine Banks's claim that she was only minimally acquainted with

12

defendant when in fact her cousin would testify that Banks had known defendant since 1994.

Initially we note that defendant has failed to establish the factual predicate of his claim in relation to these witnesses that defendant now claims counsel should have called. First, there is absolutely no indication in the lower court record, or even in the materials supporting defendant's motion for remand, that an internet expert could have uncovered photographs of Banks's son on Facebook or that a medical expert would have testified in defendant's favor if called. Absent some offer of proof regarding how such experts might have testified, defendant has not [met] his burden of establishing the factual predicate of his claim. Cf. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Second, there is likewise a lack of evidence to establish how Banks's son would have testified if called, meaning defendant has not shown that such testimony would have been favorable to defendant or that its omission deprived defendant of a substantial defense. See *Russell*, 297 Mich App at 716. Finally, with respect to Banks's cousin and defendant's brother, there is no record support for the testimony defendant now claims they would have provided. It is true that defendant submitted affidavits from these individuals in relation to his untimely motion for a remand, but such documents are not properly before us on appeal because they are not part of the lower court record. See *Horn*, 279 Mich App at 38; *Watkins*, 247 Mich App at 31.

In any event, even considering the affidavits produced by defendant on appeal, it is clear that defendant cannot establish that he was prejudiced by counsel's failure to call the various witnesses he now mentions on appeal. As noted, there is no evidence that testimony from an internet expert, a medical expert, or Banks's son would have favored defendant, meaning that defendant has not shown a reasonably probability that, but for counsel's failure to call these witnesses, the result of the proceedings would have been different. Cf. *Ackerman*, 257 Mich App at 455-456. With respect to testimony from defendant's brother, he was not a witness to the robbery itself and his claim to have dropped defendant at Banks's house at 11:30 does not provide defendant with any sort of alibi for the robbery at 2:00 a.m. Rather, this evidence would only further confirm that defendant was in relatively close proximity to the gas station on the night of the robbery. Accordingly, we cannot conclude that counsel's failure to present this testimony affected the outcome of the proceedings. With respect to testimony from Banks's cousin, it appears defendant believes she could have testified regarding the length and nature of Banks's relationship with defendant for the purpose of impeaching Banks's claim that she did not know defendant well. But, any testimony on this issue would likely have been inadmissible because it would have involved impeachment of a witness's credibility though the use of extrinsic evidence regarding a collateral issue, which is prohibited by MRE 608(b). See *People v Rosen*, 136 Mich App 745, 758; 358 NW2d 584 (1984). Further, given that the nature of defendant's relationship with Banks is a tangential issue which did not bear directly on defendant's guilt or innocence, we fail to see how testimony from Banks's cousin on this issue could have created a reasonable probability of a different outcome. Thus, defendant has not shown he was denied the effective assistance of counsel.

Next, defendant argues that trial counsel was ineffective with respect to his cross-examination of Banks.  In particular, defendant asserts that counsel failed to challenge Banks's credibility.  Although defendant frames his argument in terms of counsel's cross-examination of Banks, he does not propose any questioning that defense counsel should have pursued or explain how such questioning would have created a reasonable probability of a different outcome.  Instead, in support of this claim that counsel failed to challenge Banks's credibility, defendant rehashes his earlier arguments regarding testimony Banks's cousin might have provided with respect to defendant's relationship with Banks and defendant claims that he was naked when bitten by the police dog, a fact which defendant claims could have been proven with evidence showing the wound caused by the dog bite and DNA testing to establish that his blood was not on the green coat.

To the extent defendant argues this evidence should have been presented to discredit Banks, his arguments in this respect are without merit because these claims are not factually supported by the lower court record.  See *Hoag*, 460 Mich at 6.  Testimony from police officers at trial indicates that defendant was fully clothed, and in fact wearing several layers of clothing, when bitten by the dog during his apprehension in Banks's home.  Even if we were to consider the materials defendant offers on appeal, defendant makes no offer of proof to support his claim that DNA testing of the coat would have been favorable to his defense or that he was unclothed when apprehended.  Therefore, counsel cannot be considered ineffective for failing to introduce evidence on these issues.  Further, as discussed *supra*, impeachment of Banks through the presentation of extrinsic evidence from her cousin regarding a collateral issue would have been improper under MRE 608(b).  See *Rosen*, 136 Mich App at 758.  And, given the overwhelming evidence presented at trial, impeachment of Banks on this collateral issue would not have created a reasonable probability of a different outcome.  Moreover, we note that more generally, contrary to defendant's arguments on appeal, counsel did not fail to challenge Banks's credibility, but in fact specifically argued during closing that, among other shortcomings, Banks's claim to have let a near-stranger into her home at 2:00 in the morning was "suspicious."  Additionally, counsel did cross-examine Banks, and defendant has not overcome the presumption that trial counsel exercised reasonable professional judgment in his decisions regarding how to question Banks.  See *Davis*, 250 Mich App at 368.  On the whole, defendant has not shown that counsel's treatment of Banks's testimony was unreasonable or that, but for counsel's failure, there was a reasonable probability of a different outcome.  Thus, defendant has not shown that he was deprived of the effective assistance of counsel.

In his Standard 4 brief, defendant also argues that he received ineffective assistance of counsel. Defendant largely reiterates the same arguments raised in appellate counsel's brief, which we reject for the same reasons discussed supra. Defendant's additional arguments are without merit for the reasons discussed below.

\*    \*    \*

First, defendant argues that trial counsel was ineffective for failing to give an opening statement.  "[T]he waiver of an opening statement involves 'a subjective

14

judgment on the part of trial counsel which can rarely, if ever, be the basis for a successful claim of ineffective assistance of counsel.'" *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Here, there is nothing in the record to overcome the presumption that counsel's decision not to give an opening statement was an exercise of sound trial strategy and there is no basis to conclude that counsel's failure to do so affected the outcome of the lower court proceedings. Cf. *id*.

Second, defendant argues that trial counsel failed to obtain and test various pieces of evidence. As noted, defense counsel made a detailed request for discovery, and the lower court record does not establish what evidence trial counsel actually obtained or failed to obtain. Thus, defendant has not established the factual predicate of his claim, *Hoag*, 460 Mich at 6, and he has not shown that counsel was objectively unreasonable for failing to obtain evidence. Regardless, defendant has not established that he was prejudiced by the alleged failures of counsel with respect to the various pieces of evidence identified in his brief. Defendant has not presented any information about what tests on the evidence would have shown or how the evidence or tests would support his defense. Further, trial counsel may have made the reasonable decision not to have the evidence tested to avoid creating any additional incriminating evidence against defendant. In fact, during closing arguments, trial counsel used the lack of testing to argue in defendant's favor, highlighting that the prosecution did not provide any evidence that the footprints matched defendant's shoes, that there was no fingerprint evidence tying defendant to the robbery, and that the green jacket, if worn by defendant, would have had puncture holes in it from a dog bite. On this record, defendant failed to overcome the presumption that trial counsel's decision to forego testing of items was sound trial strategy. *Davis*, 250 Mich App at 368.

Third, in his Standard 4 brief, defendant argues that trial counsel failed to cross-examine witnesses with respect to the color of the jacket defendant wore the night of the robbery in light of testimony at the preliminary examination that defendant wore a brown jacket that evening. Contrary to defendant's claim, more fully, at the preliminary examination, there was testimony that defendant's jacket was reversible and one side was dark green—which was the same "color and design of the jacket that was visible from the video surveillance." Trial counsel may not have wanted to highlight this fact. Defendant has not overcome the presumption that this decision was sound trial strategy. *Davis*, 250 Mich App at 368. Defendant also asserts various other problems with the cross-examination conducted by defense counsel in relation to the green coat, which we have reviewed and which are not supported by the record. Defense counsel in fact questioned witnesses about the coat, meaning that there is no factual predicate for these claims. *Hoag*, 460 Mich at 6. Defendant has not overcome the presumption that counsel's questioning of witnesses was a matter of trial strategy. See *Davis*, 250 Mich App at 368.

Fourth, defendant also argues that trial counsel failed to offer the defense that none of the evidence from the robbery was found on defendant. However, this point was clear from the testimony. The record plainly demonstrated that the money and gun

were found inside the box spring, and there was no contention that the items were found on defendant.  Trial counsel's decision not to raise or dispute an obvious point was a matter of trial strategy.  See *id*.

In sum, defendant has not demonstrated that counsel's performance was deficient or that, but for counsel's errors, there was a reasonable probability of a different outcome.  Consequently, defendant has not established his ineffective assistance of counsel claim.  See *Douglas*, 496 Mich at 592.

(Mich. Ct. App. Op., ECF No. 30-5, PageID.772-777.)

Petitioner's habeas arguments parallel the arguments he made to the Michigan Court of Appeals.  He again insists, with no record support, that a more detailed analysis of the footprints in the snow, fingerprint analysis of the gun, or DNA analysis of the coat would have swayed the jury.  Petitioner claims that he was sleeping on the couch, not fully dressed or swaddled in coats, when Ms. Banks's oldest son, apparently seventeen-years-old at the time, knocked on the door because he did not have the key to his own home.  Petitioner posits that the boy had just committed the robbery and returned home; that the boy had the gun and the cash and, upon his return, stashed the gun and the cash in his mother's boxspring.  When police followed the footprints to the Banks home and knocked on the door, Petitioner feared being caught—not because of his participation in a robbery, but for violating the terms of his parole—so he promptly fled to Ms. Banks's bedroom and hid in the closet.  He remained hidden until the police dog pulled him out and he was handcuffed, still bleeding from his encounter with the dog.

Petitioner has constructed a story that might pin the robbery on Ms. Banks's son, but his story is contradicted by the testimony of other witnesses on several key points.  Moreover, virtually all of the testimony that undercuts Petitioner's version was well-known to trial counsel from the very beginning because it was elicited at the preliminary examination.  First, Petitioner's version of events finds no support in the testimony of Ms. Banks.  Second, Petitioner's version of events is flatly contradicted by the officer who was present when the police dog pulled Petitioner

from the closet, wearing so many layers of clothing, including coats, that it was difficult to handcuff Petitioner.  Third, Petitioner's claim that he was a stranger to the coat was contradicted by preliminary examination testimony that Petitioner was in the police vehicle outside the Banks home handcuffed and wearing the coat.  Fourth, there is no testimony that the police dog punctured Petitioner's skin and the pictures of "injuries" that Petitioner proffered on appeal do not show any such punctures such that one might expect blood to be on the coat.

It is against that backdrop that counsel had to decide whether to compel a more in-depth analysis of the physical evidence, testing the gun for fingerprints, examining the footprints to show a mismatch with Petitioner's shoes, and testing the coat for DNA.  At that point, counsel was forced to weigh the possibilities that more in-depth analyses might inculpate Petitioner against the possibilities that they would prove inconclusive or exculpate Petitioner.[2]  Importantly, once the tests were done, there would be no turning back.  Even inconclusive tests would carry a price because the results would eviscerate the claim that the prosecutor had failed to present important evidence that jurors might expect to see.  Defense counsel could no longer argue that there were glaring holes in the prosecutor's presentation that might give rise to reasonable doubt.

But this Court's conclusions as to whether counsel's performance fell short on these issues are immaterial.  What matters is whether the court of appeals' analysis was reasonable.  It is reasonable on its face.  It is well-grounded in the record.  Petitioner has failed to demonstrate that the appellate court's determinations regarding his ineffective assistance of trial counsel claims are contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on those claims.

---

[2] It is noteworthy that in weighing those possibilities counsel was not unfamiliar with Petitioner.  Trial counsel had represented Petitioner in multiple criminal prosecutions before the armed robbery case. (Sentencing Tr., ECF No. 30-4, PageID.762.)  Indeed, Petitioner described trial counsel as "a good attorney, in my opinion, the best over here." (*Id.*, PageID.763.)

**IV.    Ineffective assistance of appellate counsel (habeas grounds II-V)**

The remainder of Petitioner's habeas grounds complain that his appellate counsel was ineffective for failing to raise, or properly investigate, Petitioner's claims that trial counsel was ineffective.   It is difficult to fathom that appellate counsel failed to raise a particular ineffective-assistance-of-trial-counsel claim when appellate counsel raised such a broad ineffective-assistance-of-trial-counsel claim on appeal.

Moreover, the nature of appellate advocacy suggests that appellate counsel might still be effective even if counsel does not raise every possible issue on appeal.   "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).   To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.   As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.   *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."   *Id.*

Generally, Petitioner cannot show that the issues counsel decided to forego were "clearly stronger" than the ones counsel raised because, even where counsel did not raise the issues, Petitioner raised the foregone arguments in his *pro per* supplemental brief and they were flatly rejected as meritless by the Michigan Court of Appeals.   For example, even if appellate counsel failed to raise trial counsel's failure to test the green coat for DNA (habeas ground II), Petitioner raised it, the court of appeals addressed it, and concluded it was meritless.   As set forth

18

above, the court of appeals' determination that trial counsel was not ineffective for failing to test the green coat for DNA was a reasonable application of *Strickland* and well-supported by the record.  Thus, Petitioner has failed to show, as required by *Smith v. Robbins*, that this issue "was clearly stronger than issues that counsel did present." *Id.* at 289.  Moreover, the fact that the issue was reasonably determined to be meritless means that appellate counsel was not professionally unreasonable for failing to raise it and that Petitioner was not prejudiced by the failure. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Similarly, Petitioner's claim that counsel was ineffective for not impeaching Officer Galbreath with the officer's preliminary examination testimony about the color of the jacket taken from Petitioner (habeas ground III) was rejected as meritless by the Michigan Court of Appeals. (Mich. Ct. App. Op., ECF No. 30-5, PageID.776.)  Petitioner is correct that the officer testified at the preliminary examination that Petitioner was wearing a brown jacket.  But, as noted by the appellate court, "contrary to defendant's claim, more fully, at the preliminary examination, there was testimony that defendant's jacket was reversible and one side was dark green—which was the same 'color and design of the jacket that was visible from the video surveillance.'" (*Id.*) Appellate counsel's decision to forego the claim that trial counsel was ineffective for not highlighting this testimony was, therefore, professionally reasonable and in no way prejudicial. *Coley*, 706 F.3d at 752.

Petitioner's argument that appellate counsel failed to raise trial counsel's failure to raise Petitioner's medical condition (habeas ground V)—that a gunshot wound limited Petitioner's mobility such that he could not have fled the gas station after the robbery—fails for a different reason.  Appellate counsel raised the argument in Petitioner's appeal brief. (Pet'r's Appeal Br., ECF No. 30-5, PageID.803.)  Moreover, the court of appeals addressed it as if counsel had raised

19

it below and rejected it as factually unsupported.  (Mich. Ct. App. Op., ECF No. 30-5, PageID.773-774.)  The state court's rejection of Petitioner's argument was patently reasonable, as his claim is unsupported.

Finally, Petitioner's argument that appellate counsel rendered ineffective assistance because counsel failed to challenge trial counsel's failure to raise the prosecutor's misconduct in presenting perjured testimony (habeas ground IV) is also meritless—factually and legally meritless.   Working  through  the  layers  of  Petitioner's  claim,  its  merit  depends  on  the determinations that Officer Galbreath presented false testimony, that the prosecutor knew the testimony was false, that trial counsel should have raised the prosecutorial misconduct claim, and that  appellate  counsel  should  have  raised  trial  counsel's  failure  to  raise  the  prosecutorial misconduct claim.

At the very base of Petitioner's claim is the testimony of Officer Galbreath.  (Trial Tr., ECF No. 30-3, PageID.692-718.)  Officer Galbreath was dispatched to the gas station initially.  While there, he received a call that Petitioner had been apprehended at the Banks house.  Officer Galbreath  traveled  to  that  location.   At  that  time  Petitioner  was  in  a  police  vehicle  awaiting transport to the hospital.  Officer Galbreath participated in the search of the home with Ms. Banks's permission.  Officer Galbreath found the glasses, the money, and the gun.  Officer Galbreath then returned  to  the  gas  station.   Following  that,  the  officer  returned  to  the  police  station  where  he finished processing the evidence and booking Petitioner.  As part of the booking process, Officer Galbreath gathered Petitioner's clothing, including the green coat.  Officer Galbreath testified:

| | | |
|---|---|---|
| Prosecutor: | Did you actually take any items from Mr. Taylor? |
| Witness: | Yes, I did.  I believe we gathered his clothing and the things from him there. |
| Prosecutor: | All right.  And the clothing that he had on, what—what specifically was he wearing? |

| | |
|---|---|
| Witness: | He had a pair of white tennis shoes on, a pair of blue jeans and then a—a green jacket. |
| Prosecutor: | Okay.  And did you—you—you indicated that you took all those items? |
| Witness: | I had—yes, I did. |
| Prosecutor: | All right. |
| Witness: | Obtained those items from him. |
| Prosecutor: | I'm showing you what's been marked as People's proposed exhibit number four. . . . Please open that and describe-- |
| Witness: | It is the green jacket that Mr. Taylor was wearing which is very similar to the jacket that was observed in the video . . . . |
| Prosecutor: | All right. And so you took that from Mr. Taylor back on December 26, 2013 during the booking process? |
| Witness: | Yes. It was obtained from Mr. Taylor. |
| Prosecutor: | And is it in substantially the same condition as when you – |
| Witness: | Yes. |
| Prosecutor: | Took that—took possession of it? |
| Witness: | Yes.  It was given to me, yes. |

(Trial Tr., ECF No. 30-3, PageID.711-712.)  Petitioner's counsel clarified the circumstances under which Galbreath came into possession of the coat:

| | |
|---|---|
| Counsel: | [A]t booking my client has that coat on? |
| Witness: | I can't say for sure if he did or not.  I just know it was given to me after it was taken from him. |
| Counsel: | But you don't know if it was actually taken from him, do you? |
| Witness: | No. |
| Counsel: | You don't know where that came from other than it was in the house somewhere? |
| Witness: | No, it was given—it was taken off of him by Officer Postma, I believe, at the hospital.  Based on the label. |

21

(Trial Tr., ECF No. 30-3, PageID.716.)

Petitioner reads the testimony and asks, "Which one was it, Officer Galbreath 'took the jacket during booking' or was it 'taken by Officer Postma at the hospital['] or was it 'taken from somewhere in the house and someone gave it to him other than Officer Postma.'" (Pet., ECF No. 20-1, PageID.440.)  The "taken from somewhere in the house" comment was not from Officer Galbreath, it was part of the question from Petitioner's counsel.  Galbreath denied that proposition. The other two propositions, however, are not necessarily inconsistent.  It is entirely possible that Officer Postma "took" the coat from Petitioner at the hospital and then turned the coat and Petitioner over to Officer Galbreath during booking.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Id.*  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  *Id.*

Here, Petitioner has not identified inconsistent testimony, much less false testimony.  His allegations are utterly groundless.  But even if the testimony could be characterized as inconsistent or the words stretched beyond their common meaning to be actually false, Petitioner has failed to show that the prosecution knew the testimony to be false.  Under those circumstances, it cannot be said that defense counsel was professionally unreasonable for failing to call out the

prosecutor for presenting false testimony or that appellate counsel should have raised that issue on appeal.

Petitioner raised the perceived inconsistency in Galbreath's testimony in his *pro per* supplemental brief on appeal.  (Pet'r's *Pro Per* Supp. Br., ECF No. 30-5, PageID.849-850.) And Petitioner claimed his counsel was ineffective with regard to the testimony because his cross-examination was not effective.  (*Id*.)  But Petitioner did not claim the prosecutor presented knowingly false testimony, that trial counsel should have objected, or that appellate counsel should have raised trial counsel's failure to object, until the motion for relief from judgment.  (Pet'r's Mot. for Relief from J., ECF No. 30-6, PageID.914.)

The trial court rejected the claim because Petitioner had failed to show "cause" for not raising the claim on direct appeal; Petitioner had failed to show that his appellate counsel was ineffective for failing to raise the trial counsel's failure to raise the prosecutor's presentation of knowingly false testimony.  (Jackson Cnty. Cir. Ct. Order, ECF No. 30-6.)  Although the circuit court resolved the bottom three levels of the issue—the perjured testimony, the prosecutor's knowing use of it, and trial counsel's failure to object—as procedurally defaulted, the state court resolved the top level of the issue—appellate counsel's ineffective assistance—on the merits.  The court concluded that Petitioner had failed to demonstrate cause which is typically established by showing ineffective assistance of appellate counsel.  Here, however, the trial court concluded that Petitioner could not blame appellate counsel for failing to raise the issue when Petitioner filed a *pro per* supplemental brief and also failed to raise the issue.  (*Id*., PageID.975-976.)  That reasoning has not been universally accepted by panels in the Sixth Circuit.  *Compare Sheffield v. Burt*, 731 F. App'x 438, 442 (6th Cir. 2018) ("Sheffield had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised.  He did not raise the issue."), and *McKinney v. Horton*, 826 F. App'x 468, 473 (6th Cir. 2020) ("We do not

read *Sheffield* . . . to mean that a habeas petitioner's failure to raise certain claims in his optional Standard 4 brief while on appeal in state court precludes a later finding that those claims constitute cause to excuse a procedural default based on ineffective assistance of appellate counsel.").

To prevail here, Petitioner must show that the state court's determination that appellate counsel did not render ineffective assistance is contrary to, or an unreasonable application of, clearly established federal law. Petitioner has not shown that the court's decision is contrary to *Strickland*, the clearly established federal law regarding ineffective assistance, even if one might argue that it is contrary to *McKinney*. Moreover, whether or not the state court adopted the right reason, it reached the correct result. For the reasons set forth above, at every level of this layered claim, the claim is meritless. Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*,

537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  January 21, 2021                              /s/ Ray Kent
                                                      United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).